UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JULIANO  BALDERAS, a/k/a  JIULIANO §
FLORENTINO BALDERAS,                            §
TDCJ # 02307656,                                       §
                                                                §
         Petitioner,                                       §
                                                                §
VS.                                                           §   CIVIL ACTION NO. 4:23-0569
                                                                §
ERIC GUERRERO,                                      §
                                                                §
         Respondent.                                    §

## MEMORANDUM OPINION AND ORDER

Petitioner Juliano Balderas, also known as Jiuliano Florentino Balderas,[1] is an inmate in the custody of the Texas Department of Criminal Justice–Correctional Institutions Division (TDCJ).  Balderas filed a petition for a writ of corpus (Dkt. 1) under 28 U.S.C. § 2254 challenging his Harris County conviction and a supporting brief (Dkt. 2). The respondent, Eric Guerrero, answered and seeks dismissal of the petition (Dkt. 7).[2]  The respondent also submitted relevant state court records (Dkt. 8).  Balderas did not respond, and the time to respond has expired.  The claims are ripe for decision.  Having considered the petition, the briefing, all matters of record, and the applicable legal authorities, the Court determines that the petition should be **dismissed** for the reasons that follow.

---

[1]     In his filings, the petitioner provides his name as Juliano Balderas.  TDCJ's public online records reflect his name as Jiuliano Florentino Balderas.

[2]     Bobby Lumpkin was previously the respondent in this action.  Eric Guerrero has succeeded Lumpkin as Director of TDCJ.  Under Rule 25(d) of the Federal Rules of Civil Procedure, Guerrero is automatically substituted as a party.

1 / 19

I.      **BACKGROUND**

A.      **Procedural Background**

On February 13, 2020, a jury convicted Balderas of murder in Cause No. 1556621, 230th District Court of Harris County, Hon. Chris Morton presiding.  The court sentenced Balderas to 26 years in TDCJ (Dkt. 8-8, at 435-38).  The First Court of Appeals affirmed the judgment.  *See Balderas v. State*, 629 S.W.3d 610 (Tex. App. [Hou.–1st Dist.] 2021); Dkt. 8-11 (opinion); Dkt. 8-12 (judgment); Dkt. 8-13 (mandate).  Balderas did not file a petition for discretionary review.

On May 5, 2022, Balderas filed an application for state habeas relief (WR-93,918-01) (Dkt. 8-22, at 3-21).  After the Court of Criminal Appeals remanded to the trial court for further development of the habeas record (Dkt. 8-15), the trial court entered findings of fact and conclusions of law (Dkt. 8-21, at 3-16).  On January 25, 2023, the Court of Criminal Appeals denied state habeas relief without written order on the findings of the trial court without a hearing and on the court's independent review of the record (Dkt. 8-14). On February 15, 2023, Balderas filed his petition for federal habeas relief.

B.      **Factual Background**

Balderas was convicted of murder in connection with the death of Raul Perez, who died when Balderas' vehicle collided with his.  The prosecution claimed that Balderas was intoxicated at the time of the accident and relied in part on "retrograde extrapolation," which is the analysis of test results from a later time to retroactively calculate a person's blood alcohol concentration (BAC) at the time of an incident.  In this case, the prosecution used Balderas' blood samples from 2:39 a.m. and 6:46 a.m. on June 26, 2017, to calculate

2 / 19

his BAC at approximately 11:00 p.m. the night before.    The prosecution also relied on other evidence that Balderas was intoxicated, including his breath, eyes, and speech; his admission to officers that he had been drinking alcohol; and the officers' field testing. The appellate court summarized the relevant facts as follows:

> On June 25, 2017, at approximately 11:00 p.m., Raul Perez, the complainant, was traveling westbound on West Little York Road in Harris County, Texas. [Balderas], who was traveling eastbound against traffic in the westbound lane of West Little York Road, collided with Perez's vehicle, killing him. Two children, ages four and eleven, were passengers in [Balderas'] vehicle at the time of the collision.
>
> Deputy David Bass with the Harris County Sheriff's Office (HCSO) was dispatched to the scene of the accident. Deputy Bass testified that when he arrived, [Balderas] was standing next to his vehicle and the complainant was pinned inside of his truck. Deputy Bass testified that the complainant, who was not breathing, was deceased. [Balderas] provided Deputy Bass with his name and date of birth and stated, "I know I'm going away for a long time." An ambulance transported [Balderas] and the two children to the hospital.
>
> As part of the fatality motor vehicle investigation, HCSO Deputy Blake Bondurant went to the hospital to speak with [Balderas]. He testified that [Balderas] exhibited multiple signs of intoxication: [Balderas] emitted an odor of alcohol from his breath and person, his eyes were bloodshot, and his speech was slurred. [Balderas] admitted that he had consumed three alcoholic drinks earlier that day, the first at 4:00 p.m. and the last at 8:00 p.m. [Balderas] told Deputy Bondurant that he was the driver of the Tahoe involved in the accident and that two children were in the Tahoe at the time of the collision. The emergency medical records admitted at trial showed that the children were [Balderas]'s four-year-old son and an eleven-year-old girl.
>
> Based on [Balderas'] signs of intoxication and his admission that he had consumed alcohol prior to the accident, Deputy Bondurant administered the horizontal gaze nystagmus (HGN) test to [Balderas]. Deputy Bondurant testified that the HGN test consists of a total of six clues (three for each eye), that four clues in an individual suggests intoxication, and that [Balderas] exhibited all six clues. Deputy Bondurant did not administer the other two standardized field sobriety tests—the walk-and-turn test and the one-leg stand test—because [Balderas] was lying in a hospital bed and was not ambulatory.
>
> Deputy Bondurant presented [Balderas] with a DIC-24 Form advising him that he was under arrest for driving while intoxicated and requesting a blood specimen.

3 / 19

> After [Balderas] refused to consent to a blood draw, Deputy Bondurant obtained a search warrant to take a blood sample.. . .
>
> A hospital nurse drew [Balderas'] blood on June 26, 2017, at 2:39 a.m., pursuant to the warrant. The State then had the blood specimen tested for the presence of alcohol.
>
> . . .
>
> Jason Gaswint, a toxicologist with the Harris County Institute of Forensic Sciences (HCIFS), tested [Balderas'] blood sample. He testified that the test results showed that [Balderas'] blood-alcohol concentration (BAC) was 0.126 grams of ethanol per 100 milliliters of blood, which is above the legal limit of 0.08.
>
> Amy Kelly, the HCIFS Deputy Chief toxicologist, performed a retrograde extrapolation of [Balderas'] blood sample to determine [Balderas'] BAC at the time of the accident. Kelly testified that, based on her calculations, [Balderas'] BAC was 0.191 at the time of the collision.
>
> At the conclusion of trial, the jury found [Balderas] guilty of murder as charged in the indictment. The trial court assessed [Balderas'] punishment at twenty-six years' confinement.

*Balderas*, 629 S.W.3d at 611-13 (footnote omitted).

Balderas' state habeas application raised two claims of ineffective assistance of counsel: (1) trial counsel failed to object to Dr. Kelly's unreliable retrograde extrapolation; and (2) trial counsel failed to object to the admission of results from a warrantless blood draw at LBJ Hospital at 6:46 a.m. on June 26, 2017 (Dkt. 8-22, at 8-11).  In response, trial counsel submitted an affidavit.[3]  The state habeas court issued findings of fact and conclusions of law, finding the affidavit credible and determining that Balderas' claims

---

3    Counsel's affidavit is not in the state habeas record but was clearly considered by the court, as it is referenced in the findings of fact and conclusions of law.  Balderas supplies the affidavit as an exhibit to his memorandum (Dkt. 2, at 41-44).

lacked merit.  The Court of Criminal Appeals then denied habeas relief based on the trial court's findings and its independent review of the record.

In his federal petition, Balderas raises the same two claims that he raised in his state habeas application.  He recounts additional facts from his trial, including testimony from an accident investigator about Balderas' estimated speed and a possible mechanical failure in his vehicle; a toxicologist's testimony regarding a possible contaminating substance in Balderas' blood sample; two defense witnesses from auto-parts stores where Balderas had worked; and an automotive expert for the defense who testified about investigators' failure to adequately consider possible mechanical issues that could cause a driver to lose control of a vehicle.  He also provides more detail about the testimony from the prosecution's toxicology witness, Dr. Kelly, and summarizes trial testimony from the defense's toxicology expert regarding contamination of blood-testing results and potential inaccuracies in retrograde extrapolation analysis (Dkt. 2, at 3-9).  All of this evidence is in the trial record, as Balderas' record citations demonstrate.

The respondent answered and provided a copy of the state court records.  Balderas did not respond to the answer.

## II.    LEGAL STANDARDS

This federal petition for habeas corpus relief is governed by the applicable provisions of the Anti-Terrorism and Effective Death Penalty Act (AEDPA).  *See* *Woodford v. Garceau*, 538 U.S. 202, 205-08 (2003); *Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997). Under AEDPA, federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was

contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7-8 (2002); *Cobb v. Thaler*, 682 F.3d 364, 372-73 (5th Cir. 2012).

Federal courts look to the "last reasoned opinion" as the state court's "decision." *Ylst v. Nunnemaker*, 510 U.S. 797, 803 (1991); *see Wilson v. Sellers*, 584 U.S. 122, 125 (2018); *Salts v. Epps*, 676 F.3d 468, 479 (5th Cir. 2012). "Where a state court's decision is unaccompanied by an explanation," and the lower courts did not issue a reasoned opinion, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011); *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding that there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

Review under AEDPA is "highly deferential" to the state court's decision. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). To merit relief under AEDPA, a petitioner may not merely show legal error in the state court's decision. *White v. Woodall*, 572 U.S. 415, 419 (2014) (stating being "merely wrong" or in "clear error" will not suffice federal relief under AEDPA). AEDPA review exists only to "guard against extreme malfunctions in the state criminal justice systems." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (cleaned up). "[F]ocus[ing] on what a state court knew and did," *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011), AEDPA requires inmates to "'show that the state

6 / 19

court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woodall*, 572 U.S. at 419-20 (quoting *Richter*, 562 U.S. at 103). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this court may grant habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent. *See Kittelson v. Dretke*, 426 F.3d 306, 318 (5th Cir. 2005). Under the "contrary to" clause, a petitioner must show that the state court reached "a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Matamoros v. Stephens*, 783 F.3d 212, 215 (5th Cir. 2015) (cleaned up). To constitute an "unreasonable application" of clearly established federal law, the state court's determination "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods*, 575 U.S. at 316 (cleaned up).

On factual issues, AEDPA precludes federal habeas relief unless the state court's adjudication of the merits was based on an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *See* 28 U.S.C. § 2254(d)(2); *Martinez v. Caldwell*, 644 F.3d 238, 241-42 (5th Cir. 2011).

Under § 2254(e)(1), factual determinations made by a state court are presumed correct and the petitioner must rebut the presumption by "clear and convincing evidence."

Under § 2254(e)(2), a federal court may not hold an evidentiary hearing on any claim for which the petitioner "failed to develop the factual basis" in state court, unless the petitioner makes a showing including that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

III.    **ANALYSIS**

Balderas claims that his trial counsel was constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), because (1) she failed to object to the prosecution expert's unreliable retrograde extrapolation; and (2) she failed to object to the admission of results from a warrantless blood draw at the hospital. The state habeas court determined that each claim lacked merit.

**A. Ineffective Assistance of Counsel Standards**

Under *Strickland*, a criminal defendant claiming ineffective assistance of counsel must show that defense counsel rendered deficient performance and that the defendant was prejudiced:

> To demonstrate deficient performance, the defendant must show that, in light of the circumstances as they appeared at the time of the conduct, "counsel's representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms." There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." . . . .

> To demonstrate prejudice under *Strickland*, [the defendant] must show that counsel's deficient performance was "so serious as to deprive him of a fair trial, a trial whose result is reliable." This requires the showing of a reasonable probability that but for counsel's deficiencies, the result of the proceeding would have been different.

*Rhoades v. Davis*, 852 F.3d 422, 431-32 (5th Cir. 2017) (quoting *Strickland*, 466 U.S. at 687-89, 694).  *Strickland* defines a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  This requires a "substantial, not just conceivable, likelihood of a different result." *Pinholster*, 563 U.S. at 189 (cleaned up).  The petitioner's burden to show a "reasonable probability" of changed outcome is less than a preponderance:

> The question is not whether the defendant would more likely than not have received a different verdict . . . but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995); *see United States v. Dominguez Benitez*, 542 U.S. 74, 83 n. 9 (2004). The prejudice inquiry is focused on the "fairness of the trial and the reliability of the . . . verdict in light of any errors made by counsel, and not solely the outcome of the case." *White v. Thaler*, 610 F.3d 890, 912 (5th Cir. 2010) (cleaned up).

Review of counsel's performance is deferential, and counsel enjoy a strong presumption that their conduct is within the "wide range" of the bounds of professional norms.  *Strickland*, 466 U.S. at 689.  A petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at 687.  Any "strategic decisions" made by trial counsel "must be given a strong degree of deference."  *Rhoades*, 852 F.3d at 432.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *Strickland*, 466 U.S. at 690; *see Rhoades*, 852 F.3d at 434.

On habeas review, when a state court has adjudicated an ineffective-assistance-of-counsel claim on the merits, the petitioner bears an especially heavy burden.  The question

is not whether the state court's application of *Strickland* was incorrect, but rather whether it was unreasonable.

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 105 (cleaned up). *See Trottie v. Stephens*, 720 F.3d 231, 240-41 (5th Cir. 2013) ("'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable'" (quoting *Richter,* 562 U.S. at 102)).

### B. **Retrograde Extrapolation (Claim 1**)

Balderas claims that Dr. Kelly's retrograde extrapolation for the prosecution was unreliable and that his trial counsel was constitutionally ineffective because she did not object to the testimony (Dkt. 1, at 6; Dkt. 2, at 11-31 (citing *Mata v. State*, 46 S.W.3d 902 (Tex. Crim. App. 2001); *Kelly v. State*, 824 S.W.2d 568, 53 (Tex. Crim. App. 1992)). He argues that his counsel's failure to object allowed Dr. Kelly to testify that his BAC was 0.191 at the time of the accident, which prejudiced him.

In *Mata*, the Court of Criminal Appeals ruled regarding retrograde extrapolation analysis and noted potential sources of error in the use of the method. The *Mata* court stated that "even those who believe retrograde extrapolation is a reliable technique have utilized it only if certain factors are known, such as the length of the drinking spree, the time of the last drink, and the person's weight." *Mata*, 46 S.W.3d at 915. Therefore, when

10 / 19

evaluating reliability, courts must consider certain specific factors regarding the testing and individual at issue:

> The court evaluating the reliability of a retrograde extrapolation should also consider (a) the length of time between the offense and the test(s) administered; (b) the number of tests given and the length of time between each test; and (c) whether, and if so, to what extent, any individual characteristics of the defendant were known to the expert in providing his extrapolation. These characteristics and behaviors might include, but are not limited to, the person's weight and gender, the person's typical drinking pattern and tolerance for alcohol, how much the person had to drink on the day or night in question, what the person drank, the duration of the drinking spree, the time of the last drink, and how much and what the person had to eat either before, during, or after the drinking.

*Id.* at 916.   The court held that the science could be reliable if the expert met certain standards, including the expert's ability to explain the science and appreciation of the risks:

> We believe that the science of retrograde extrapolation can be reliable in a given case.  The expert's ability to apply the science and explain it with clarity to the court is a paramount consideration. In addition, the expert must demonstrate some understanding of the difficulties associated with a retrograde extrapolation. He must demonstrate an awareness of the subtleties of the science and the risks inherent in any extrapolation. Finally, he must be able to clearly and consistently apply the science.

*Id.*  The court allowed that "not every single personal fact about the defendant must be known to the expert."  *Id.*

Balderas argues that Dr. Kelly knew only three factors, all of which were self-reported by the petitioner to law enforcement officers:  that he began drinking at 4:00 p.m., that he stopped drinking at 8:00 p.m., and that he consumed three beers (Dkt. 2, at 17).  He cites to Dr. Kelly's testimony that reliable retrograde extrapolation is possible only if she is able to determine that the subject was in the "elimination phase" of alcohol consumption at the time of the accident (Dkt. 8-4, at 54-55), and claims that her assumption that Balderas

11 / 19

was in the elimination phase is "dubious" for reasons explained by Balderas' expert in state habeas proceedings (Dkt. 2, at 18-19; *see* Dkt. 8-22, at 49-63 (expert report)). Balderas further claims that Dr. Kelly's testimony was unreliable because she used an elimination rate of .018, which is "16% faster than the recommended elimination rate"; that use of proper protocols would have yielded a BAC over 25% lower than that reported by Dr. Kelly, as his state habeas expert explained; and that his expert's report supported the defense theory that his BAC "could have been" below the legal limit at the time of the incident (Dkt. 2, at 19-20 (citing Dkt. 8-22, at 55-56)). He concludes that, in light of the unreliability, his trial counsel should have requested a "gatekeeper" hearing outside the presence of the jury, and that such a hearing would have led to the exclusion of Dr. Kelly's conclusions (*id.* at 21).

Trial counsel's affidavit in state habeas proceedings stated that she was familiar with *Mata* and considered it when preparing for trial (*id.* at 41-42). She also stated that she did not object to the retrograde extrapolation because she believed that Dr. Kelly's hypothetical testimony was admissible. Rather, her strategy "was to cross examine [Dr. Kelly] on reliability of the extrapolation and put [her] own expert on the stand to refute her testimony," which she did (*id.* at 43). Counsel also points out that Dr. Kelley had more data than the *Mata* expert (*id.*).

The respondent argues that an objection to Dr. Kelly's retrograde extrapolation analysis would have been futile and frivolous, citing to Texas Rule of Evidence 702 and *Mata*. He addresses factors supporting Dr. Kelly's reliability, including her appreciation of the risks of retrograde extrapolation and her awareness of the subtleties of the science

12 / 19

(Dkt. 7, at 18), and argues that trial counsel employed a reasonable strategy when she chose to cross-examine Dr. Kelly and put on a defense expert (*id*. at 22-24).

The state habeas court found that trial counsel's affidavit was credible and that "the facts asserted therein are true" (Dkt. 8-21, at 4). It held that Dr. Kelly's testimony was reliable and admissible under *Mata* because Dr. Kelly considered many individual factors relevant to Balderas' case.

> 11. The Court finds this case distinguishable from *Mata*. Unlike the expert in *Mata,* Dr. Kelly was provided a hypothetical case which included many individual factors such as (1) the time of the first drink, (2) the time of the last drink, (3) the amount of alcohol consumed, (4) the type of alcohol consumed, (5) the time of the stop, (6) the time of the blood draw, and (7) the results from the blood draw. (R.R. 4 at 53-54).

> 12. The Court finds, based on the record, that the trial court could have reasonably concluded that the retrograde extrapolation evidence Dr. Kelly provided was reliable and helpful. *See Mata,*46 S.W.3d at 916-17; *Fulemviderv. Slate,*176 S.W.3d 290 295 (Tex. App— Houston [T' Dist.] 2003, pet. refd); *see also Corley v. State,* 541 S.W.3d 265, 271 (Tex. App. 2017) (The trial court was within its discretion to admit the retrograde extrapolation testimony of die expert witness when the expert had knowledge of many individual factors).

(*id*. at 6). The court determined that the defense expert's report, which challenged Dr. Kelly's underlying assumptions, did not prove that Dr. Kelly's testimony was unreliable and, furthermore, that Balderas' BAC would "still [have been] significantly above the legal limit" even accepting the reduced BAC advocated by the defense (*id*. at 7-8). The court thus concluded that Balderas' counsel was not deficient for her failure to object based on admissibility (*id.* at 8). It further determined that trial counsel's strategy not to object and counter Dr. Kelly's testimony was "reasonable and well within the parameters of prevailing professional norms" (*id*. at 10).

Dr. Kelly considered multiple independent factors as required by *Mata* and was qualified as an expert. Moreover, even accepting the testimony of Balderas' expert, his BAC was above the legal limit at the time of the accident. Balderas therefore does not show that an objection by his counsel would have led to the exclusion of Dr. Kelly's retrograde extrapolation testimony.

An attorney's failure to raise a meritless objection cannot provide the basis for a holding that an attorney rendered deficient performance under *Strickland*. *See Garza v. Stephens,* 738 F.3d 669, 677 (5th Cir. 2013) (counsel did not act deficiently by failing to raise a meritless objection); *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) ("failure to raise meritless objections is not ineffective lawyering; it is the very opposite") (cleaned up); *Sones v. Hartgett*, 61 F.3d 410, 415 n. 5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point"); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections"). Therefore, Balderas fails to show that his counsel was deficient for her failure to object to Dr. Kelly's testimony.

Additionally, trial counsel's affidavit said she made a strategic decision not to object to Dr. Kelly's testimony because she believed it was admissible, and instead chose to cross-examine Dr. Kelly and present her own expert. Her strategic decision is entitled to "a strong degree of deference," *Rhoades*, 852 F.3d at 432, because "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Balderas does not show that his counsel "made errors so serious that [she] was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment." *See id*. at 687.  Therefore, he does not demonstrate deficient performance, and his *Strickland* claim will be dismissed. [4]

For essentially the same reasons, Balderas' claim regarding deficient performance fails under AEDPA.  The state habeas court determined that Balderas had failed to show that, if trial counsel had objected to Dr. Kelly's testimony about retrograde extrapolation, the trial court would have erred in overruling the objection. In these proceedings, Balderas does not demonstrate that the state habeas court's determination that the objection lacked merit was an unreasonable determination of the facts in light of the evidence presented in state court or otherwise satisfies the standards of 28 U.S.C. § 2254(d).

### C.     Warrantless Blood Draw (Claim 2)

In Claim 2, Balderas claims that his trial counsel was constitutionally ineffective because she did not object to admission of the results of a warrantless blood draw at LBJ Hospital (Dkt. 1, at 6; Dkt. 2, at 31-40).  He argues that his counsel's failure to object allowed Dr. Kelly to testify that his BAC was 0.191 at the time of the accident, which prejudiced him.

Balderas' claim relies on trial counsel's failure to object when medical records from LBJ hospital, which reflected Balderas' BAC of 0.038 at 6:46 a.m. on June 26, 2017, came into evidence.  He contends that his counsel was aware the medical records contained the

---

[4]     Because the Court relies on deficient performance, it need not address prejudice under *Strickland*.   However, as the respondent argues, the prosecution relied on significant other evidence of intoxication, including testimony from officers at the accident scene and hospital, Balderas' slurred speech and bloodshot eyes, and the HGN field test indicating that he exhibited six out of six signs of intoxication (Dkt. 7, at 24-26).

15 / 19

blood draw results because she had filed the records with the court clerk and points out that, when counsel expressed frustration with the prosecutor for introducing the evidence, the court noted that she had failed to object to any blood draw results in the medical records (*id.* at 32-33 (citing trial record). Balderas argues that, if the prosecution had been required to establish authenticity of the records, they could not have met their burden of proof because the State had no witnesses on its witness list from LBJ Hospital (*id.* at 34).

The respondent argues that counsel's performance was strategic and thus, under Fifth Circuit authority, cannot be the basis for a *Strickland* claim unless it permeates the entire trial with unfairness (Dkt. 7, at 29-30). He further argues that, even assuming counsel's performance was deficient, Balderas cannot show prejudice because his conviction did not hinge on the admission of the challenged BAC result. He points to "ample" evidence in the record supporting a guilty finding, including the officers' testimony, Balderas' smell and appearance, and the results of his HGN field (*id*. at 31-33 (citing record)).

Trial counsel's state habeas affidavit explained she put the medical records with the 6:46 a.m. BAC result on file with the court because many details in the records supported Balderas' defense and that, moreover, the BAC result was well below the legal limit (Dkt. 2, at 43-44). She explains that she did not object to the records because the State did not violate the motion to suppress. She further states that she was "upset at trial" because the State did not approach before discussing result, despite her motion in *limine*, and that it was her "trial strategy to react strongly in front of the jury" (*id*. at 44). As stated above,

16 / 19

the state habeas court found that trial counsel's affidavit was credible and that "the facts asserted therein are true" (Dkt. 8-21, at 4).

Trial counsel's decision to put the records on file and allow their admission because they supported her client's defense, and her decision to react strongly in front of the jury, are classic strategic decisions by counsel that are due a "strong degree of deference." *See Rhoades*, 852 F.3d at 432. Where, as here, counsel made a "conscious and informed decision on trial tactics and strategy," counsel's decision "cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) (cleaned up). Balderas has not made that showing. Therefore, he does not demonstrate that his counsel's performance was deficient under *Strickland*, and his habeas claim must be denied.

Because Balderas has not shown deficient performance, the Court need not address prejudice under *Strickland* or deference to the state habeas court under § 2254. His second claim will be dismissed.

## IV.    **CERTIFICATE OF APPEALABILITY**

Habeas corpus actions under 28 U.S.C. § 2254 or § 2255 require a certificate of appealability to proceed on appeal. 28 U.S.C. § 2253(c)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner.

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "'that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (cleaned up).  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484; *see Pierre v. Hooper*, 51 F.4th 135, 137 (5th Cir. 2022) (a certificate of appealability may not issue based solely on a debatable procedural ruling).

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  After careful review of the pleadings and the applicable law, the Court concludes that reasonable jurists would not find its assessment of the claims debatable or wrong.  Because the petitioner does not allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## IV.   CONCLUSION

For the reasons stated above the Court **ORDERS** as follows:

18 / 19

1.     Balderas' petition for a writ of habeas corpus is **DISMISSED**.

2.     A certificate of appealability is **DENIED**.

The Clerk will provide copies of this order to the parties.

SIGNED at Houston, Texas, on ___March 17, 2026_____, 2026.


_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE